**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

DEBRA GANDY,

　　　　　　*Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

　　　　　*Defendant*.

_____/

CASE NO. 1:17-cv-12932

DISTRICT JUDGE THOMAS L. LUDINGTON

MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (Docs. 15, 18)**

## I.　　RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 15), be **DENIED**, that the Commissioner's Motion, (Doc. 18), be **GRANTED**, and that this case be **AFFIRMED**.

## II.　　REPORT

### A.　　Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Debra Gandy's ("Plaintiff") claims for Supplemental Security Income

benefits ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. 4). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 18).

On July 29, 2014, Plaintiff filed the instant applications for SSI and DIB, alleging a disability onset date of July 10, 2013, later amended to September 1, 2014. (Tr. 201-07). The Commissioner denied her claims. (Tr. 94-125). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on April 6, 2016 before ALJ Henry Perez, Jr. (Tr. 73-93).  The ALJ issued a decision on June 1, 2016, finding Plaintiff not disabled. (Tr. 14-33). On July 21, 2017, the Appeals Council denied review, (Tr. 1-9), and Plaintiff filed for judicial review of that final decision on September 7, 2017. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See*

*Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.     Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

3

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

4

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.     ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 14-33). At Step One, the ALJ found that Plaintiff would meet the insured-status requirements of the Act through December 31, 2017, and had not engaged in substantial gainful activity since September 1, 2014, her amended alleged onset date. (Tr. 19). At Step Two, the ALJ concluded that the following impairments qualified as severe: history of breast cancer, history of shoulder interstitial tear, obesity, and sickle beta thalassemia. (Tr. 20-21). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 21-22). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except

> Claimant can lift and carry 20 pounds occasionally, 10 pounds occasionally, and sit, stand, and walk for 6 hours. Claimant can push and pull as much as Claimant can lift and carry. Claimant is limited to reaching overhead with her right upper extremity frequently.

(Tr. 22). At Step Four, the ALJ found Plaintiff incapable of performing her past relevant work. (Tr. 26). Proceeding to Step Five, the ALJ found Plaintiff capable of performing a substantial number of jobs in the national economy, and therefore not disabled under the Act. (Tr. 26-28).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Administrative Hearing

##### i.    Function Report

Plaintiff filled out a Function Report dated August 14, 2014 which appears in the administrative record. (Tr. 243-50). She indicated that her injuries made the duties of her prior work—such as "lift[ing] residents out of bed," "squatting," and "taking [the] garbage out"—too much to bear. (Tr. 243). She spent each day at home watching television. (Tr. 244). She took care of her daughter, though her mother helped "take [Plaintiff's daughter] to activities" as she did not "like to be around people." (*Id.*). She did not struggle with personal-care activities, although she found sitting in her tub difficult. (*Id.*). She did not require reminders to groom or take her medication. (Tr. 245). She could prepare simple meals, but "cut[ting] up food" proved difficult. (*Id.*). She could sweep and mop for up to two hours. (*Id.*). She went outside "twice a week" due to a "fear of people" and "what they think of . . . how I look." (Tr. 246). She went grocery shopping

with her mother twice a month, and could handle her own finances. (*Id.*). Her only hobby was "watching TV," and she engaged in no social activities. (Tr. 247). Prompted to indicate abilities with which she struggled, she marked: lifting squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, completing tasks, concentration, following instructions, using her hands, and getting along with others. (Tr. 248). Her ability to pay attention and handle stress or changes in routine was "fair," but she followed written and spoken instructions "poorly." (*Id.*).

## ii.   Plaintiff's Testimony at the Administrative Hearings

Plaintiff opened her testimony by amending her alleged onset date to September 1, 2014. (Tr. 76-77). Asked to explain why she could not work, she said that "[d]ue to the breast cancer that I had and the conditions of the glaucoma, and I can't lift, I can't stand, I can't sit long periods of time, and also I had a lot of MRI's, CT scans on my back and for my neck." (Tr. 77). Adding more detail, she noted "I developed lymphedema on the right side with carpal tunnel syndrome where I can't use my hands to type or text on the phone, I can't lift and my area is swollen." (Tr. 78). To alleviate the symptoms from her edema, she used "pain killers, vitamin C and D, and I wear a compression sleeve for the carpal tunnel. I sleep in a wrist splint." (*Id.*). She could not reach overhead on her right side. (*Id.*). "I can't pick up no more than a gallon of milk." (Tr. 79). She also struggled when using her left hand because "I had a cut . . . that stopped moving it in the tendons," though she could lift up to "ten pounds" with it. (*Id.*). She no longer underwent chemotherapy, but she was "in a position of getting reconstructive surgery for the right side." (*Id.*).

The pain in Plaintiff's back extended "straight down" through her spine, particularly in her neck. (Tr. 80). She described the pain in her cervical and thoracic spine as "sharp, razor stabbing pain" occurring "[a]ll day, but mainly at nighttime and early morning." (*Id.*). She ranked the pain at a "[s]ix and a half" out of ten. (*Id.*). Treating the pain involved applying heat and using a TENS unit twice a day. (Tr. 80-81). Specifically, she used the TENS unit for "three to four hours" in the morning and "one to two hours" in the evening. (Tr. 81). Due to these issues, she had trouble with stairs, bending, and driving. The pain in her neck was "[d]ull, sharp, like a piercing pain," and it occurred "like half of a day off and on, but mainly at night. It wakes me up at night in my sleep." (*Id.*). Yard work exacerbated her symptoms. She spent about four hours "in the afternoon to the evening" reclining in her bed. (Tr. 82). She took hydrocodone, ibuprofen, Gabapentin, and Lyrica, which had a negative effect on her memory, anxiety, and depression. (*Id.*). She switched positions every fifteen minutes. (Tr. 83). She had no hobbies and engaged in no social activities, although she went to church every Sunday. (*Id.*).

## ii.    The VE's Testimony at the Administrative Hearings

The VE began by classifying Plaintiff's past work as having an "SVP 4, semiskilled, classified at medium, performed it very heavy." (Tr. 88). Thereafter, the ALJ posed his first hypothetical question, asking the VE to assume a person with

> an exertional limitation lifting and carrying 20 pounds occasionally, 10 pounds frequently, sitting 6 hours, standing 6 hours, walking 6 hours, pushing and pulling as much as she can lift and carry. Reaching overhead is limited to frequent with the right upper extremity. I'm putting this individual

at the semiskilled level. Could such a person be expected to perform Claimant's past relevant work?

(Tr. 88-89). The VE noted that such a person could not perform Plaintiff's past work, but other work in the national economy would exist, including: "inspector" (with 3,000 regional jobs and 200,000 national jobs), "packager" (with 3,000 regional jobs and 100,000 national jobs), and "router" (with 2,000 regional jobs and 60,000 national jobs). (Tr. 89).

In his second hypothetical, the ALJ asked what work would be available if Plaintiff's testimony were found credible and her alleged exertional limitations supported by the record, including a sit/stand requirement and a need to change positions after 15 minutes. (*Id.*). The VE identified the following sedentary jobs: "sorter" (with 1,000 regional jobs and 100,000 national jobs), "stone setter" (with 1,000 regional jobs and 50,000 national jobs), and "finisher" (with 13,000 regional jobs and 50,000 national jobs). (Tr. 89-90). However, adding Plaintiff's alleged non-exertional limitations into the calculus would preclude all competitive work.

Plaintiff's counsel then asked the VE whether a limitation to "occasional use" of her right arm for "reaching, handling and fingering," and the VE indicated that his previous answers would not apply. (Tr. 91). Other "surveillance system monitor" jobs would exist, with 1,300 regional availabilities and 50,000 national availabilities. (*Id.*).

## F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various

categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513.

"Acceptable medical sources" include, among others, licensed physicians and licensed or

certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who

are not "acceptable" and almost any other individual able to provide relevant evidence.

*Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an

impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both    "acceptable"

and non-acceptable sources provide evidence to the Commissioner, often in the form of

opinions "about the nature and severity of an individual's impairment(s), including

symptoms, diagnosis and prognosis, what the individual can still do despite the

impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical

sources" issue such opinions, the regulations deem the statements to be "medical

opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527.

Excluded from the definition of "medical opinions" are various decisions reserved to the

Commissioner, such as whether the claimant meets the statutory definition of disability

and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of

medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at

whether the source examined the claimant, "the length of the treatment relationship and

the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and

specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to

"other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at \*2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at \*1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at \*1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

11

SSR 96-2p, 1996 WL 374188, at \*5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at \*1 (6th Cir. 1995).

An ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn therefrom—formerly termed a credibility determination[1]—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at \*2. The ALJ evaluates complaints of disabling pain by confirming that objective medical

---

[1] On March 28, 2016, SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), superseded and replaced SSR 96-7p. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016). The Social Security Administration explained in SSR 16-3p that the ruling's main purpose was to eliminate the term "credibility," and thereby "clarify that subjective symptom evaluation is not an examination of an individual's character, . . ." 2016 WL 1119029, at \*1 n.1. As some in this Circuit have observed, the ruling, read in its entirety does not appear to substantively alter much of the manner by which ALJ's evaluate claimants' statements. *See id.* at \*2 ("[W]e are eliminating the use of the term 'credibility from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."); *see also, e.g.*, *Brothers v. Berryhill*, No. 5:16-CV-01942, 2017 WL 2912535, at \*10 (N.D. Ohio June 22, 2017), *R. & R. adopted sub nom. Brothers v. Comm'r of Soc. Sec.*, No. 5:16-CV1942, 2017 WL 2908875 (N.D. Ohio July 7, 2017) ("[A]ccording to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them.").

evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. 16-3p, 2016 WL 1119029, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. 16-3p, 2016 WL 1119029, at *5. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

> (i)     Your daily activities;
> (ii)    The location, duration, frequency, and intensity of . . . pain;
> (iii)   Precipitating and aggravating factors;
> (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
> (v)     Treatment, other than medication, . . . received for relief of . . . pain;
> (vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 16-3p, 2016 WL 1119029, at *7. Furthermore, the claimant's

work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); 16-3p, 2016 WL 1119029, at *8.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff raises two arguments in her Motion: (1) the ALJ erred in failing "to find that Plaintiff's multiple herniated discs in the cervical, thoracic, and lumbar spine" and "carpal tunnel syndrome" were severe impairments at Step Two of his analysis, (Doc. 15 at ID 1184-87); and (2) the ALJ rendered a flawed RFC assessment, depriving his findings of the support of substantial evidence at Step Five, (*Id.* at ID 1188-89). I address each argument in turn.

### 1.    Findings Regarding Plaintiff's Back Injuries and Carpal Tunnel Syndrome

Plaintiff first argues that the ALJ committed remandable error in finding her back injuries and carpal tunnel syndrome ("CTS") to be non-severe impairments. (Doc. 15 at ID 766). In her view, remand is required because "the testimony and objective testing show that the Plaintiff's [back injuries and CTS] are more than . . . 'slight abnormalities'" and cause more than mild limitations in her functional capacity. (*Id.* at ID 1187).

So long as an ALJ considers both "severe and nonsevere impairments in the remaining steps of the sequential analysis," the fact that certain impairments "were not deemed to be severe at step two is . . . legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *accord Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's [non-severe impairment] in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's [non-severe impairment] constituted a severe impairment could not constitute reversible error."). As such, the ALJ's analysis on its face undermines Plaintiff's Step-Two argument. The ALJ expressly discussed Plaintiff's back injuries and CTS at Steps Two and Three of the analysis, and having found no limitation therefrom, declined to credit such conditions as limiting when answering the question whether Plaintiff could perform her prior work or other work in the national economy. *See* (Tr. 20) (Step 2: noting how the medical record did "not indicate" that Plaintiff's back injuries or CTS "required any significant treatment or resulted in limitations" (citing

(Tr. 614, 617, 698, 708, 906, 960-61, 1113))); (Tr. 21-22) (Step 3: "Claimant's medical records do not show evidence of major dysfunction and chronic pain involving at least one major weight-bearing joint resulting in an inability to ambulate effectively or at least one major peripheral joint in each upper extremity resulting in an inability to perform fine and gross movements effectively as required by listing 1.02. . . . As such, I find that Claimant does not meet or medically equal any 1.00 listing for the musculoskeletal system."); (Tr. 23-25) (RFC determination: addressing the accident that caused Plaintiff's back injuries, clinical evidence indicating such condition was receptive to treatment and not limiting, and other clinical evidence showing Plaintiff's CTS did not affect her strength or ability to perform fine and gross manipulations). The ALJ's Step-Two findings as to Plaintiff's back injuries and CTS therefore constitute (at worst) harmless error.

In any event, substantial evidence endorses the ALJ's Step-Two findings that Plaintiff's back injuries and CTS were not severe impairments. As an initial matter, the ALJ gave little weight to Plaintiff's averments—including those related to the impairments at issue, (Tr. 24)—and Plaintiff does not challenge this finding, thereby conceding its validity.[2] *Accord, e.g.*, *Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014

---

[2] Had Plaintiff developed such an argument, it nevertheless would not have prevailed. As the ALJ observed, the record is replete with instances in which Plaintiff exhibits a proclivity to exaggerate her symptoms. *See* (Tr. 24) ("April of 2016 treatment records indicate that Claimant reported pain that was 'more than 10/10,' but was noted to be smiling and laughing, without any grimace or tearfulness." (quoting (Tr. 1116))); *see also* (Tr. 299, 453) ("States 'I cannot bend my thumb.' Full range of motion on exam."); (Tr. 23, 340, 344, 689, 932, 1049) (great degree of independence in activities of daily living); (Tr. 313, 332, 623, 662, 690, 970, 1026) (denying musculoskeletal pain); (Tr. 313, 333, 340, 726, 970, 985, 991, 998, 1026, 1041) (unimpaired gait).

WL 861541, at *7 (E.D. Mich. Mar. 5, 2014) ("Plaintiff, however, does not challenge the ALJ's credibility finding, and therefore, she has waived this argument." (citing *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (refusing to "formulate arguments on [the plaintiff's] behalf, or to undertake an open-ended review" where she "made little effort to develop" her challenge))). Moreover, the record showed that, notwithstanding her pleas to the contrary, Plaintiff's strength and range of motion remained largely intact, her gait presented as normal, and her symptoms were readily susceptible to treatment. (Tr. 23-25) (discussing these factors); *e.g.*, (Tr. 66, 300, 454, 614, 633, 651, 700, 850, 1041) (strength intact); (Tr. 349, 880, 918, 1036) (full range of motion in cervical and/or thoracic spine); (Tr. 824, 867, 884, 937, 948, 1022) (treatment viewed as having a high chance of success from medical providers); (Tr. 313, 333, 340, 726, 970, 985, 991, 998, 1026, 1041) (unimpaired gait); (Tr. 313, 332, 623, 662, 690, 970, 1026) (denying pain); (Tr. 35, 42, 46, 49, 56, 63, 824) (success with medication). The mere fact that objective evidence led medical sources to diagnose Plaintiff's herniated discs and CTS says nothing of their severity or impact, and Plaintiff cannot convincingly argue otherwise. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Accordingly, substantial evidence bolsters the ALJ's Step-Two finding.

Because the ALJ's findings at Step Two are supported by substantial evidence, and because the ALJ proceeded to consider the impact of Plaintiff's non-severe impairments throughout the remainder of her opinion, the Court should discount Plaintiff's argument on this front.

### 2.    RFC Assessment

Plaintiff next argues the ALJ's assessment "falls short of including the entirety of Plaintiff's documented limitations. Specifically, the limitations caused by the Plaintiff's back impairments and carpal tunnel syndrome which includes standing and walking limitations and lifting/carrying limitations. Due to the Plaintiff's disc herniations which cause impingement and her carpal tunnel syndrome which the Plaintiff testified she cannot lift with her right hand nor can she stand, walk, or sit for extended periods, certainly not 6 hours in an 8-hour workday." (Doc. 15 at ID 1189). Failure to include such limitations requires remand, she argues, because it resulted in "an erroneous Step Five determination" and "the burden is on the Commissioner at Step 5." (*Id.* at ID 1188).

At the outset, I note that Plaintiff's challenge to the RFC assessment is not a Step-Five challenge; the burden to prove the existence of Plaintiff's limitations rested with Plaintiff, not the ALJ. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner."); *see also Seiler v. Comm'r of Soc. Sec.*, No. 2:16-CV-13541, 2018 WL 992062, at *5 (E.D. Mich. Feb. 1, 2018) ("Although Plaintiff purports to frame this as a challenge to the ALJ's Step 5 determination, because the hypothetical posed to the vocational expert in this matter is essentially identical to the RFC, this is in reality a 'veiled attack' on the ALJ's underlying RFC finding." (quoting *Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013))), *R. & R. adopted,* No. 16-13541, 2018 WL 949952 (E.D. Mich. Feb. 20, 2018).

18

Aside from alluding to her own testimony—which, as established above, was properly accorded little weight—Plaintiff elects to garnish her argument with no citations to the record. Nor does she challenge the ALJ's weight-assignments to Plaintiff's GAF score or opinions from the "illegible source at Prodigy Spinal Rehabilitation," (Tr. 25), Dr. Nguyen, Dr. Mills, or Dr. Csokasy. Nor does she specify exactly what limitations the ALJ should have found. Nor does she show that, had the ALJ included her unspecified-but-desired limitations in the RFC, he would have found an insignificant number of jobs for Plaintiff to perform in the national economy. Without developing these aspects of her argument, Plaintiff cannot properly attack the ALJ's conclusions; the ALJ's weight-assignments are conceded, and sum of the records he found credible constitute substantial evidence for his findings. *Accord McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks and citation omitted)); *Thomas v. Comm'r of Soc. Sec.*, No. 15-13291, 2017 WL 927623, at *7 (E.D. Mich. Feb. 17, 2017) ("Plaintiff has the burden of demonstrating that his RFC is insufficiently restrictive." (citing *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994))), *R. & R. adopted,* No. 15-CV-13291, 2017 WL 914027 (E.D. Mich. Mar. 8, 2017); *see also, e.g.*, *Hudgins v. Berryhill*, No. 1:16-CV-380-TAV-CHS, 2017 WL 3882514, at *3 (E.D. Tenn. Sept. 5, 2017); *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *4 (E.D. Mich. July 24, 2017), *R. & R. adopted,* No. 16-CV-11818, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017); *Berry v. Comm'r of Soc. Sec.*, No. 16-10548, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8,

2016), *R. & R. adopted,* No. 16-10548, 2017 WL 67458 (E.D. Mich. Jan. 6, 2017); *Greene v. Comm'r of Soc. Sec.*, No. 214CV10005DPHPTM, 2014 WL 12570932, at \*10 (E.D. Mich. Nov. 26, 2014), *R. & R. adopted,* No. 14-10005, 2014 WL 12573828 (E.D. Mich. Dec. 31, 2014).

For these reasons, Plaintiff's argument on this ground must also fail.

### H. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 15), be **DENIED**, that the Commissioner's Motion, (Doc. 18), be **GRANTED**, and that this case be **AFFIRMED**.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 1, 2018                                S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: May 1, 2018                                 By s/Kristen Castaneda
                                                  Case Manager

21